Good morning, ladies and gentlemen. Our first case for argument this morning is Wright Field Rooftops v. The Chicago Cubs. Mr. Filialo. May it please the Court. Your Honor, this is an appeal from granting of a motion to dismiss under Rule 12 with prejudice. And the four claims that are before this Court on appeal are to relate to the breach of contract, Counts 8 and 9, and to relate to alleged violations of Section 2 of the Sherman Act. So we are here with a record that assumes that what we've alleged is true and that reasonable inferences should be drawn in our favor. I'd like to spend some time talking about Count 8, which is the breach of contract claim about the sign that was erected to obstruct the views. And we've put into the record in our reply brief, on page 1, a photo of the sign that's been erected in front of the clinched rooftops. And that's the sign that's at issue here. It was erected with government approval, if I recall correctly. The sign was erected with governmental approval, as it had to be, as anything would have had to have been with respect to the Wrigley Field. Because at the time the contract was entered into, the preliminary designation of Wrigley Field and its protected features was already made. And that meant that before you could do anything that would be substantial enough to block the views from any of these rooftops, you had to get governmental approval. And that, I think, is an important consideration when we get to the issue of whether there was a breach here and whether the district court and the Cubs' interpretation is the only reasonable interpretation of the agreement. So we have this sign that's blocking our views, which we allege was directly placed in front of our rooftop to obstruct our views. And the agreement, just so we can put it in perspective, section 6.6 of the contract states in the first sentence that the Cubs shall not erect windscreens or other barriers to obstruct the views of the rooftops. The second sentence says any expansion of Wrigley Field approved by governmental authorities shall not be a violation of this agreement, including this section. The district court has interpreted the second sentence as essentially embracing and encompassing the first sentence in a way that makes it meaningless. If you accept the district court's interpretation and the Cubs' argument that any windscreen or any barrier obstructed to obstruct the views of the plaintiff rooftops is an expansion approved by the government, that first sentence means nothing because you had to have governmental approval anyway. So if you're going to interpret this contract as we should under Illinois law to give meaning to every provision, we need to give meaning to that first sentence. And that is a perfectly reasonable way to do that, and that's our interpretation. When we see the words any expansion of Wrigley Field approved by governmental authorities, that is not to be viewed in isolation. That needs to be viewed in the context of the whole agreement and should be harmonized with the other provisions. For example, the expansions, the only expansions of Wrigley Field that are discussed in this agreement are in sections 6.1 through 6.4, which talk about expansion of the Wrigley Field leacher seat. Those are the expansions that are the subject of that second sentence. If any of those expansions are approved by the government, then... Counsel, let me tell you my problem with that interpretation. There are several places in the contract that talk about things like bleacher expansion, where bleacher is used as an adjective modifying expansion. And there are several places in the contract where it just talks about expansion. That sounds like expansion is a broader term than bleacher expansion. Otherwise, why do you need the term bleacher to modify it in some places? I think the primary reason bleacher was used to modify bleacher expansions was because under those circumstances, the rooftops would be entitled to some relief from the royalty obligation. If there was an expansion of the bleacher seating and it obstructed all or part of their views, they get relief from the royalty obligation. And that's how that term is used in this agreement, and that is what's so sensible about it. Yes, but, again, that sounds like you're now agreeing that bleacher expansion and expansion are different things. They have different consequences. Why aren't they just different things? They may be different things, Your Honor, but in the context of this agreement, I think it means bleacher seating expansions. Now, that's certainly a reasonable interpretation of the agreement because any expansion, that word any, as this Court has found and the Supreme Court has found and the Third Circuit has found, any expansion needs to be understood in the context of the agreement. Its meaning depends on the context. It could be every. It can be one. It can be some. It can be a random selection of one of many. And that's what the case law says, including the Seventh Circuit opinion, the Supreme Court and Nixon, the Seventh Circuit opinion's first star, and the Third Circuit opinion, Commonwealth of Pennsylvania. In fact, in that case, Your Honor, it dealt with exactly what you just said. The argument was that it should have said such expansion because there had been or such, and then it was modified a different term. And the argument was that because they didn't use such and they had described other things in the contract that it didn't mean one of those or it didn't mean such, any such. And the Court rejected that argument and affirmed summary judgment saying that it was clear from the context that any in that case meant one thing, and that was the context of the agreement. But our position is that the Cubs' interpretation simply leads to an unreasonable result, one that eliminates the meaning of Section 1 and makes the other provisions of the contract rather irrational. The marketing requirements, the relief from certain kinds of expansions of the Wrigley Field bleacher seating, but none if the Cubs just erect a sign. Does that make any sense that the rooftops would have agreed that they still have to pay? There's why contracts need to make sense ex post. People who sign contracts are allocating risks, and one can understand this contract as allocating the risk of particular things in a way that deals with that risk by asking for city approval. If there's no city approval, something doesn't happen. If there is city approval, it happens. Your Honor, if that were the case, there would not be a statement, a provision that says, no, the Cubs shall not erect any windscreen or other barrier to obstruct the views from the rooftops because you just let it, you just say any expansion. No, this just drives me back to my initial question. On your view of expansion, a windscreen would never be an expansion, and so it would never be allowed. When you make an exception for a windscreen, you're implying that it would indeed be an expansion, but we've carved that out of the contract. You see my problem? I see your problem, Your Honor, but I see windscreen, it doesn't have to be absolutely not an expansion, but I think a reasonable interpretation would be if it's erected to obstruct the views of the rooftops, that's a breach of the agreement, whether there's governmental approval or not. And I'm not just asking you to look at it after the fact. At the time of this negotiation, you can see in this agreement how the parties dealt with allocating that risk for anything that would have blocked their views. This deal was we will pay you 17% of our gross revenues for 20 years, every year, in exchange for letting us be. Let us have the views. Let us operate our businesses. That's what the deal was, and the one exception was the then contemplated expansion of the Wrigley Field bleacher seating. That is certainly a reasonable interpretation. It is certainly a reasonable interpretation to harmonize all of these provisions in the agreement that what they said when they said you shall not erect any barrier to obstruct the views, that that's what they meant. And we alleged in this complaint that when they announced their decision to move this sign in front of different rooftops, they announced we are sending the death blow to you. They distinctly and definitively were trying to destroy this rooftop business. Your Honor, I'd like to spend a few minutes, if I can, from my time on the antitrust issues. On the contract issue, just to sum up, we think the only reasonable interpretation would lead to a breach of contract based on the Cubs' erection of a barrier to obstruct our views and that this sign is such a barrier regardless of governmental approval. But if there is more than one reasonable interpretation or the expression is too indefinite and there's an ambiguity, then it should be returned to the trier of fact so that we can ascertain what the parties' intents were at that time. And that's supported by Illinois law and common law in general. The antitrust case, there's three arguments. One, that the business, this arrangement, this attempt to monopolize the market of rooftops was exempt from the business of baseball. Secondly, that we did not adequately plead a plausible relevant market. And third, that we did not plead anti-competitive conduct. I'd like to start with anti-competitive conduct. The conduct we allege is that the Cubs and the ricket defendants, using the monopoly power of the Cubs. Counsel, I think you would be well advised to use your time on some other issue. Given the Supreme Court's holdings in federal baseball and later cases, you've preserved your position to ask the Supreme Court to overrule that centuries-long series of cases. But we can't do that. I'm not asking the court to do it in this argument. What I'm saying is that that business of baseball exemption doesn't apply to contractual arrangements. This case arises because a baseball team erected a scoreboard inside its own stadium. If that's not the business of baseball, it's very difficult to understand what it is. I suggest you move along. Now, you can use your time as you wish, but I'm offering friendly advice. Your Honor, I understand and respect your Honor's suggestion. I will go back to the contract claim. But I believe that the cases we cited in our brief about the business of baseball show that for the last 50 years there's never been a case in any circuit or in the Supreme Court which applied the business of baseball exemption to arrangements between a baseball team and third parties who are not in the business of baseball. Perhaps you could say a few words about your disparagement claim and how it fits comfortably within the Illinois precedent. Your Honor, it's a contractual disparagement claim. The Illinois precedent really is supportive of our position because in Pekin and the other case cited in our briefs, the question was is the conduct misleading? Are the statements misleading? In this case, we not only have misleading statements because we certainly were not stealing anybody's views. We were paying 17% royalties for them year in and year out. And the provision is disparagement, insults, or abuse. And certainly that conduct is insulting, misleading, and disparaging. And it had a very negative effect on the public. Just the court thought the statement had to be taken in context. It was really a hyperbole. What do you say about that? Well, I understand that, and there probably was a hyperbolic part of it, but it was misleading. It was seriously misleading because there's no reference to that the rooftops are a legitimate business. And when you look at that in the context of the marketing provisions that they shall jointly promote the businesses of the rooftops, clearly they weren't. The Cubs were prohibited from insulting and demeaning and misleading the public about what the business of the rooftops were. If I could go back to the contract claim itself. In fact, I see that I'm into my rebuttal time, so I'll sum up. I think our anti-competitive conduct arguments are actually very well set forth in the Hecht case, the Fishman case, and even in the dissent in the Fishman case, and that there was a refusal to deny us access to something on equal terms, and it was done selectively for the purposes of eliminating competition. And the plausible mark is an efficient fact, and we've adequately alleged it. Thank you, Your Honor. Certainly, counsel. Thank you. Mr. Clement. Good morning, Your Honors, and may it please the Court. Paul Clement for the appellees. The district court correctly dismissed the rooftops contract and antitrust claims. The plain language of Section 6.6 of the contract forecloses the rooftops efforts to find an anticipatory breach of contract in the Cubs' government-approved expansion of Wrigley Field. The second sentence of Section 6.6 makes clear that, quote, any expansion of Wrigley Field approved by government authorities shall not be a violation of this agreement, including the first sentence of Section 6.6 imposes a contractual limit on the Cubs' ability to erect windscreens or other barriers to obstruct the views of the rooftops. Thus, the second sentence's clarification that government-approved expansions do not violate the agreement, including this section, makes crystal clear that any expansion means any expansion, including the erection of a view-blocking barrier if it's government-approved. Appellant's effort to limit any expansion to any expansion of bleacher seating is simply foreclosed by the unambiguous language of the contract. As you alluded to, Judge Easterbrook, there are multiple references in the contract in Sections 6.1 through 6.4 that talk about expansion of the bleacher seating at Wrigley Field. Those same provisions then, in that same provision referring back, talk about such expansion. So there's multiple textual indicators that the parties knew how to limit the universe to expansions that expanded bleacher seating. They then have two other provisions, and 6.6 is the one that they allege that we violate, but I think 6.5 is also relevant here, that use the broader term any expansion. And 6.5 essentially preserves the ability, the party's ability to, with respect to any expansion, to fight it out before the city authorities. So the Cubs preserve their right to get an expansion, and the Rooftops reserve their right to resist the expansion in front of the government authorities. So I actually think that you don't have to go beyond Section 6.6 to reject the contract claim. You know, all of their efforts to try to get into the greater includes the lesser and all of that is really beside the point because this contract tells you exactly how to make sense of the two sentences of Section 6.6 together. One presumptively says that the Cubs contractually agree that they can't engage in windscreens or other barriers, and then Section 6.6 clearly creates an exception to that for government approved expansions, and then to avoid all doubt on the subject, it says including this section. And so that language including this section makes crystal clear that the universe of government approved expansions can include the windscreens or other barriers that are referred to in the first sentence of the section. And I really do think that if you read that in context, it eliminates all doubt. But if you want to look more contextually, I actually think the contextual clues reinforce this because Section 6.1 through 6.4 make crystal clear that the parties in negotiating this contract knew how to talk about expansions of the bleacher seating at Wrigley Field as a subset of the universe of all expansions, and they knew how to talk about a broader universe of expansions, and they did so in Section 6.5 and 6.6, and those two sections work together quite compatibly. Section 6.5 preserving the parties' rights to duke it out in front of the city authorities with respect to any expansion, and Section 6.6 saying that the consequence is if the Cubs get an expansion approved, then it doesn't violate the agreement, including that section. So I think that all fits together rather nicely. The only argument that the other side suggests is that, well, why would we have agreed to an agreement like this? As Judge Easterbrook alluded to, I think this is a perfectly rational way to allocate risk, and I think if you look contextually, even the complaint, which we're limited to, of course, here, makes clear that a bleacher expansion was on the table as a real possibility at the time the parties were negotiating this. It seems quite common sense to deal with the problem at hand in specific terms, and it doesn't seem irrational, especially if perhaps one thinks that they have a reasonable shot of persuading the city authorities not to expand a historic landmark like Wrigley Field to leave the rest of it to the government approval process come what may, and I think that's the way to make sense of this, and I think the district court correctly dismissed that breach of contract claim. As to the antitrust claims, I can hardly add to what Judge Easterbrook said in suggesting that this case is simply controlled by federal baseball, Toulson, and Flood v. Kuhn. It's a remarkable context to be in a situation where you're not only asked to overrule a Supreme Court case, but asked to overrule a Supreme Court case that the Supreme Court itself has twice refused to overrule. No, it wasn't long ago that the Supreme Court overruled a 100-year-old precedent in antitrust. Sure, and that's, you know, Dr. Miles. They can do it if they want. Right, exactly. Dr. Miles may rest in peace, and I think, though, it's prudent for the rest of us to leave the business of overruling Supreme Court cases to the Supreme Court. Well, the Constitution does refer to us as an inferior court. I would never do that, Your Honor, but there is that reference in the Constitution. You know, but I do think, even in the Dr. Miles context, I mean, you don't have the kind of remarkable confluence of events that the Supreme Court has itself considered this on multiple occasions. And then Congress comes in with the Curt Flood Act and addresses one single aspect of this with a rifle shot and leaves the rest of it essentially as is. So I won't belabor that point. I do think that, you know, if the court were inclined, it could follow the district court's path and say that there's an alternative reason to reject the antitrust claim, which is that you can't define a market as the Cubs' own brand of baseball. I think that's sort of deficient on its face, and that would be an alternative ground. The only issues that are left on the table, and I don't need to take the panel's time unnecessarily, but on the disparagement claim, which you asked about, Your Honor, I do think there that, you know, this is a disparagement clause. That's the way it's referred to in the complaint itself. And I do think the Illinois law in the Pekin case and the Lexmark case is pretty clear that you have to have an untrue or misleading statement in order to violate even a contractual disparagement provision. I do not think that the Ricketts statement at the Cubs convention, read in context, satisfies that standard. I would only sort of emphasize that you really actually have to read the entire statement, and it is in the complaint at short appendix page 17 and 18. You know, it's interesting because the last couple of lines of this, I think, actually shed some light on what Mr. Ricketts was saying, because, you know, after he sort of paints the portrait of the neighbors setting up chairs and selling seats to watch your television set, he then finishes and says, and then you turn around, rather he finishes and says, so you get up and you close the shade, and then the city makes you open them. That's basically what happened. So the key aspect of why this is misleading is that Mr. Ricketts didn't go out of his way and say, well, and at this point, thanks to the agreement, they're actually paying us a 17 percent royalty. But I think in context, this is really kind of explaining more of the historical context of this, and I do think what he's essentially referring to is, well, we tried to put up the windscreens back in 2001, and we were basically, we did that without government approval. The government didn't expressly tell us to take them down, but there was certainly pressure to take them down, and that's sort of what happened. So in context, I think it's actually more of a historical statement, but I do think there are real problems, even under a contractual claim, of making analogies actionable in this way. And so I do think that you really do, and I think Illinois law is consistent with this, you have to have something more concrete. It has to be a statement that is of its nature the kind that could be untrue. I mean, you know, if Mr. Ricketts had said that the rooftops aren't paying us anything to watch our games, I mean, that might be a disparagement claim. But this kind of analogy I don't think gets the job done. And I would only say on the amendment issue that I think the district court acted well within her discretion not to allow the amendment of the complaint. But, of course, the specific amendment of the complaint went only to the antitrust claims. There was an effort to broaden the market from live Cubs games to live events at Wrigley Field. That would still be essentially in 99% of the applications covered by the baseball exemption. And, of course, it would only broaden the market at the expense of making it clear that the Cubs have no market power in the broader market for entertainment services. It is true you can only see a Cubs game at Wrigley Field. It is not true that you can only see Pearl Jam at Wrigley Field. So I think that there are real problems with even their amended complaint as well. If the court has no further questions, thank you. We'd urge you to affirm. Thank you, counsel. Anything further? Yes, sir. In 2004, when the parties entered into this settlement agreement, they used the word barrier in Section 6.6 as a prohibition. The Cubs shall not erect any barrier to obstruct the views. They didn't say unless you get governmental approval. They didn't combine that with the second sentence in Section 6.6. We need to give meaning to that. They used barrier in one sentence and the expansion in the other. They are not the same thing. They need to be accorded different meanings. We provided a reasonable interpretation of this agreement that reconciles everything. It says any expansion relating to the Wrigley Field bleacher seating, if it's approved by the government, that's not a violation of this agreement, including this section, this section being Section 6.6, that would otherwise prohibit a barrier that obstructed the views. In the Cubs' interpretation, the parties would have agreed to some relief if there was an expansion of the bleacher seating, but no relief if they throw up a sign? That is not reasonable. That does not reconcile itself. In Article 7, they require the Cubs to promote the business of the rooftops, phone numbers and stuff, in a circumstance where they have to promote them going to a rooftop where there's a sign directly in front of you that prevents you from looking at the agreement. And this was done, as we allege, with the purpose of obstructing the views of the rooftops, to destroy their business so that the Wrigley defendants could acquire those businesses cheap. And that's why we think it's also an attempt to monopolize. I would ask the court to consider the cases like Henderson, Botsema, Twin Cities, all of which relate to contractual arrangements between a baseball team and a third party that's not subject to the baseball exemption. You don't have to overrule the baseball exemption to find an attempt to monopolize in this case. But the breach of contract claim should stand. We've offered a reasonable interpretation. The Cubs offer an interpretation. I don't think it's reasonable because it eliminates the meaning of the first sentence. But even if it is, send it back. Let us prove our case. This, if the Cubs erected a barrier to obstruct our views, regardless of whether there's governmental approval, that's a breach of the agreement. The first sentence has to mean something. Thank you, Your Honor. I have one minute left. I ask this court to reverse the district court to either remand with instructions to have the court find our interpretation the only reasonable one, or in the alternative, to reverse because there's more than one reasonable interpretation of the agreement or that the expression of the party's intent is too indefinite to support one interpretation or the other and allow us to prove the case that this sign that's right in front of our rooftops is a barrier erected to obstruct views from the rooftops that is the only, in our view, interpretation that can be reconciled with everything else. Thank you, Your Honor. Thank you very much. Thanks to both counsel. The case is taken under advisement.